UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TERESA ETTEL,

    Plaintiff,

v.

UNUM LIFE INSURANCE COMPANY OF AMERICA, *et al.*,

    Defendants.

Case No. C07-0906RSL

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the Court on defendants' motion for summary judgment. Plaintiff was a participant in a long-term disability plan, the "Group Insurance Policy Non-Participating" (the "Plan"). The Plan was issued to plaintiff's employer, defendant Costco Wholesale Corporation ("Costco") in 2001 by defendant UNUM Life Insurance Company of America ("Unum"). Plaintiff sought disability benefits under the plan for her chronic back pain. Unum denied the claim and affirmed its decision after an appeal. Plaintiff asserts a claim pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* At plaintiff's request, the Court heard oral argument in this matter on November 5, 2008.

For the reasons set forth below, the Court denies defendants' motion.

## II. DISCUSSION

**A. Background Facts.**

The relevant facts are not disputed. Plaintiff was hired by Costco in 1988. Most recently, she worked as a costumer service manager in the Executive Membership Department. Her job included improving services, growing sales, and managing programs. UACL00590.[1] Her job required a minimum of 8-9 hours in the office per day without telecommuting or flexible hours. It also involved extensive sitting, walking throughout office buildings, and some travel.

In February 2005, plaintiff's primary care physician, Dr. Faith Reeves, noted that her evaluation of plaintiff's back pain showed "some facet degeneration at L4-5 and L5-S1." UACL00666. Dr. Reeves recommended facet injections and possibly rhizotomy. Dr. Reeves referred plaintiff to Dr. Kent Ta, a rheumatologist, who ordered an MRI and diagnosed plaintiff with degenerative facet joint disease of the low back and bilateral trochanteric bursitis. UACL01343. Dr. Kathryn Garr reviewed the MRI and concluded that there was evidence of possible degeneration at L4-5 causing facet arthropathy. UACL02137. Dr. Garr performed two facet injections in plaintiff's back. Dr. Kenneth Leung, a spinal surgeon, subsequently reviewed plaintiff's MRI and recommended that she undergo a facet rhizotomy to treat her facet dysfunction and degenerative disc disease. UACL01363. The injections and rhizotomy provided only temporary relief. Plaintiff saw another rheumatologist, Dr. Carl Brodie, who recommended anti-inflammatory medication.

Several of plaintiff's physicians opined that she could not work. Dr. Reeves opined that plaintiff could not tolerate more than thirty minutes of sedentary activity. UACL01668. Dr. Brodie opined that plaintiff could not sit or stand for more than a few minutes at a time and that her prognosis was not good: "Lacking a good diagnosis and having tried various treatments without much success, I would not be very optimistic at all." UACL02223; UACL01668. Her

---

[1] All documents in this case are part of the administrative record. As the parties do, the Court will refer to documents according to their number in that record.

ORDER DENYING MOTION
FOR SUMMARY JUDGMENT - 2

physician therapist, Colleen Ryan, opined that plaintiff could not sit longer than fifteen minutes without a significant increase in pain. UACL01671. In December 2006, Dr. Schuster stated, "This patient is not capable of returning to the work force" based on her facet joint injury. UACL02723.

In August 2005, plaintiff reduced her previously full-time schedule to work three days per week because of increasing chronic back pain. She stopped working on November 11, 2005 and applied for long-term disability benefits.

The Plan defines disability as preclusion from working in the participant's "own occupation" or a "reasonable alternative:"

> You are disabled when UNUM determines that:
>
> • You are limited from performing the **material and substantial duties** of your own occupation or a reasonable alternative offered to you by your Employer due to your **sickness** or **injury**; and
> • you have 20% or more loss in your **indexed monthly earnings** due to the same sickness or injury.
>
> After 9 months of payments, you are disabled when UNUM determines that due to the same sickness or injury, you are unable to perform the duties of any **gainful occupation** for which you are reasonably fitted by education, training or experience.

UACL01462 (emphasis in original). In this case, the Plan determined that plaintiff was capable of returning to work in her "own occupation," which the Plan defines as "the job you are routinely performing when your disability begins. Unum will look at the job as it is normally performed at Costco Wholesale Corporation." UACL01485.

Plaintiff's claim was reviewed by three Unum professionals. First, its senior clinical consultant, a registered nurse, concluded that the restrictions and limitations placed on plaintiff by Dr. Reeves, Dr. Brodie, and physical therapist Ryan were unsupported. UACL01672. Second, Dr. Frank Kanovsky, a Unum orthopedic surgeon, reviewed plaintiff's file and conducted a peer-to-peer call with Dr. Reeves. Dr. Kanovsky concluded that plaintiff's claim was not supported by objective findings and her pain was of "unexplained etiology" without an orthopedic basis. UACL01680-1. Third, another orthopedic surgeon, Dr. Richard Tyler,

1 reviewed plaintiff's file and determined that plaintiff's medical records supported restrictions of
2 sedentary exertion, with occasional lifting of ten pounds and change of body position as
3 necessary. UACL01689. Unum then conducted a job analysis and determined that the
4 requirements of plaintiff's job were within the restrictions recommended by Dr. Tyler. As a
5 result, Unum denied her claim.

As part of her appeal, plaintiff submitted to a Performance-Based Physical Capabilities Evaluation ("PCE") by Dr. Theodore Becker. Dr. Becker receives patient referrals from the Department of Labor & Industries, The Boeing Company, and from various private insurance companies including Aetna, Unum, and Hartford. UACL02632. After reviewing the medical records and conducting extensive tests, Dr. Becker concluded, "The [examinee] is not considered to have the ability to sustain work functions due to the progressive biomechanical fatigue disorder in the lumbar section, and the secondary physiological dysfunction presentation of linearly elevating heart rate. . . . Full time work is not an option." UACL02327. Dr. Reeves and Dr. Brodie reviewed Dr. Becker's findings and both concurred with them. UACL02223-4; UACL01856. Dr. Reeves referred plaintiff to Dr. Julie Carkin for another opinion. Dr. Carkin also agreed with Dr. Becker's findings, and concluded that plaintiff could not work. UACL01861; UACL02787. Plaintiff also submitted a report from Don Uslan, MA, a certified rehabilitation counselor, who opined that plaintiff "is totally and completely disabled." UACL01959. His opinion was based on his review of plaintiff's medical records, Dr. Becker's report, and on his "professional experience in treating and evaluating hundreds of patients with medical conditions that are manifested by pain and fatigue." Id.

On appeal, plaintiff's file was reviewed by a registered nurse, who recommended denial of the claim. The file was then referred to Dr. Howard Hoffberg, the only independent professional to review plaintiff's claim for Unum. Dr. Hoffberg concluded that plaintiff's restrictions were not supported by objective data or by her description of her personal activities. UACL02877-79. Dr. Hoffberg opined that plaintiff could return to work if she underwent

1 interdisciplinary pain management. He also thought her condition had a psychological
2 component "with self-imposed limitations by the claimant due to impaired pain coping abilities
3 and . . . fear of activities." UACL02896. A psychiatrist subsequently reviewed plaintiff's file
4 and disagreed with her treating and examining physicians. UACL02924-27. Finally, a clinical
5 neuropsychologist and licensed psychologist reviewed plaintiff's file. UACL02933-34. She
6 concluded that plaintiff's medical history did not provide evidence of sustained, serious
7 symptoms of depression. Unum denied plaintiff's appeal. UACL02992-97.

**B.     Analysis.**

In reviewing the Plan's denial of benefits, the Court must first determine the appropriate standard of review. Then, it must determine whether Unum's benefits decision can stand.

### 1.     Applicable Standards.

The Court reviews benefit denials under ERISA *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Therefore, the first issue here is whether the ERISA plan unambiguously provides discretion to the administrator. Plaintiff concedes that it does. UACL01458; UACL01482 ("In exercising its discretionary authority under the Plan, the Plan Administrator and any designee (which shall include Unum as claims fiduciary) will have the broadest discretion permissible under ERISA and any other applicable laws;" explaining that benefits will be paid only if the Plan "decides in its discretion the applicant is entitled to them"). Based on the Plan language, the Court finds that the Plan unambiguously vests discretion in Unum as the plan's administrator. An abuse of discretion standard applies. See, e.g., Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 965 (9th Cir. 2006) (en banc)).

Finding that discretion was vested, however, does not end the inquiry. Unum concedes that a "structural" conflict of interest exists because it was both the Plan administrator and the funding source. See, e.g., Metropolitan Life Ins. Co. v. Glenn, __ U.S. __, 128 S. Ct. 2343,

2350 (2008). In determining whether Unum abused its discretion in denying plaintiff's claim, the conflict of interest does not change the standard of review. Rather, it is a factor to be weighed under all the facts and circumstances of the case. Id.; see also Abatie, 458 F.3d at 968 ("A district court, when faced with all the facts and circumstances, must decide in each case how much or how little to credit the plan administrator's reason for denying insurance coverage. An egregious conflict may weigh more heavily (that is, may cause the court to find an abuse of discretion more readily) than a minor, technical conflict might.").

It is undisputed that Unum has a history of denying valid claims. Saffon v. Wells Fargo & Co. Long Term Disab. Plan, 511 F.3d 1206, 1210 (9th Cir. 2008) ("Unum-Provident Corp. . . . boosted its profits by repeatedly denying benefits claims it knew to be valid. Unum-Provident's internal memos revealed that the company's senior officers relied on ERISA's deferential standard of review to avoid detection and liability") (citing John H. Langbein, Trust Law As Regulatory Law: The UNUM/Provident Scandal and Judicial Review of Benefit Denials Under ERISA, 101 N.W. U. L. Rev. 1315, 1317-21 (2007) (describing Unum-Provident's behavior)).

Unum argues that the conflict has been mitigated because several professionals independently reviewed plaintiff's file both at the initial review and appeal stages. Although four professionals reviewed plaintiff's claim on appeal, only one was a physician practicing in an area relevant to plaintiff's claimed disability. The other two physician reviewers were mental health professionals, despite the fact that plaintiff was not claiming disability based on her depression. In addition, all but one of the reviewers were in-house Unum professionals. In light of Unum's history of parsimonious claims granting, the fact that Unum relied on multiple in-house reviewers does not lessen the conflict. Therefore, the Court weighs the structural conflict of interest and history of denying valid claims heavily. See Glenn, 128 S. Ct. at 2351.

### 2. Unum Abused Its Discretion.

"Where the decision to grant or deny benefits is reviewed for abuse of discretion, a

ORDER DENYING MOTION
FOR SUMMARY JUDGMENT - 6

motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply." Bendixen v. Standard Ins. Co., 185 F.2d 939, 942 (9th Cir. 1999). The only legal question before the Court is whether defendant abused its discretion, or in other words, acted arbitrarily and capriciously in denying plaintiff's long term disability claim. The Ninth Circuit has held that "[a]n ERISA administrator abuses its discretion only if it (1) renders a decision without explanation, (2) construes provisions of the plan in a way that conflicts with the plain language of the plan, or (3) relies on clearly erroneous findings of fact." Boyd v. Bell, 410 F.3d 1173, 1178 (9th Cir. 2005); see Taft v. Equitable Life Assurance Soc'y, 9 F.3d 1469, 1472 (9th Cir. 1993). In this case, Unum thoroughly explained its decision and did not misinterpret or misconstrue the Plan terms. Accordingly, the Court considers whether the decision was clearly erroneous. A finding is "clearly erroneous" when "although there is evidence to support it, the reviewing [body] on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Concrete Pipe and Products of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal., 508 U.S. 602, 622 (1993) (internal citation and quotation omitted).

In this case, Unum denied plaintiff's claim in large part because of an alleged lack of objective findings. UACL02992-97. However, the Plan language does not require claimants to provide objective evidence of a disability. Nor did Unum appear to take into account the fact that "individual reactions to pain are subjective and not easily determined by reference to objective measurements." Saffon, 511 F.3d at 1216; id. at 1216 n.2 ("disabling pain cannot always be measured objectively"). Unum completely discounted plaintiff's descriptions of her chronic pain and inability to work, even though its own investigator and her treating and examining physicians consistently found her credible.[2] In fact, none of the treating, examining,

---

[2] UACL00697 (Dr. Reeves stated, "My impression of the patient is that she would like nothing more than to resolve the pain and return to work. She has functioned at a high level

ORDER DENYING MOTION
FOR SUMMARY JUDGMENT - 7

or reviewing physicians cited a reason to disbelieve plaintiff's descriptions of her own pain. Yet Unum denied her claim in large part because her complaints were subjective.

In addition, Unum's decision did not appear to consider the medical explanation regarding why objective findings were difficult to provide in plaintiff's case. See, e.g., UACL02723 (Dr. Schuster opined that plaintiff's pain was "most likely on the basis of facet joint injury. . . . [I]t is well known in orthopedic literature that to actually visualize the facet surface, . . . , unless there is an inflammatory condition in the joint, it will be below the resolution of the current technology of CT scanning and MRI"); UACL02220 (Dr. Brodie explained, "It is not an uncommon scenario for people who have a spondylitis-type syndrome to have no blood test abnormalities, no radiographic abnormalities, etc. . . . We don't necessarily have to have objective findings to support this diagnosis because they don't always exist even when they're there"). Unum's decision did not discuss those medical opinions.

Moreover, Unum gave little weight to the records that did provide objective findings. For example, Dr. Becker noted that plaintiff had an MRI that showed facet joint degeneration.[3]

---

throughout her working career, and it has been difficult for her to adjust to disability"); UACL02224 (Dr. Brodie stated, "My sense is that she would be more happy to return to work if she could have these symptoms resolved"); UACL01860-61 ("There were no inconsistencies in her story; there was no amplification in her story and the physical capacities"); UACL01945 (Mr. Uslan opined that plaintiff "approached the test in an open and honest manner. Her score suggests that her test results can be interpreted with confidence"); UACL01632 (Unum's investigator explained that plaintiff "was a good historian of her career and medical background. She maintained good eye contact, smiling frequently and answered my questions without defensiveness or apprehension"); UACL02859 (Unum reviewer on appeal states that plaintiff's doctors "all portray her as an active, athletic person and a dedicated worker prior to her going out of work and report she would love to RTW if she could. They all seem to agree that they have no reason to believe that she is malingering or has any 2nd gain issues").

[3] See also UACL0273 (Dr. Schuster opined, "Objective findings include the presence of segmented tenderness in the L4-5 and L5-S1 levels, the presence of intermittent muscular spasms demonstrable by various examiners during multiple years she has had these complaints, the positive provocative response to the facet blocks at the L4-5 and L5-S1 levels"); UACL02121 (Dr. Phillips noting reproduceable back spasms).

ORDER DENYING MOTION
FOR SUMMARY JUDGMENT - 8

UACL02994. A surgeon reviewed the MRI and stated, "On MRI she has evidence of some deterioration at L4-5 and L5-S1" with "possible" facet dysfunction. UACL02137. Nevertheless, Unum concluded that Dr. Becker's statement was "not well supported" because the radiology report did "not mention any pathology of the facet joint." As the Supreme Court noted in Glenn, an abuse of discretion may occur where an administrator "emphasized a certain medical report that favored a denial of benefits, [and] de-emphasized certain other reports that suggested a contrary conclusion." Glenn, 128 S. Ct. at 2352. Dr. Becker's lengthy report includes extensive objective findings. See, e.g., UACL02317 (Dr. Becker's finding, "There is significant decrease of tolerance in the gross posterior thigh strength over time which is consistent with the decreasing tolerance identified in the gross anterior lumbar stabilization"). Nevertheless, Unum gave his opinion very little weight.

In addition to focusing on the medical reports that favored a denial of benefits, Unum relied on a few of her personal activities while ignoring other evidence that showed how limited those activities had become. Plaintiff submitted eight letters from her husband, friends, and supervisors at Costco. Unum's decision and the reviewing physicians' opinions do not mention those letters. While the failure to consider the opinions of lay witnesses may not constitute an abuse of discretion in every case, here it is problematic because Unum focused heavily on plaintiff's personal activities. Every one of Unum's reviewers on appeal noted that her alleged inability to work was inconsistent with a trip she took to Hawaii[4] and a car trip to Eastern Washington. UACL02859; UACL02896; UACL02924-27; UACL02982. Unum's denial of plaintiff's appeal stated,

> The records also revealed that Ms. Ettel is capable of performing activities that are inconsistent with the opinion of her treatment providers regarding her functional limitations. Specifically, it would not be reasonable to expect an individual to travel to Hawaii or engage in long distance car trips, such as her trip to Eastern Washington, if her

---

[4] At least one of Unum's reviewers also stated that plaintiff traveled to Mexico. UACL1672, UACL1635. Another reviewer, however, noted that the trip was canceled. UACL02896.

symptoms are as severe as she reports.

UACL02993. However, plaintiff submitted an affidavit from the friend with whom she traveled to Eastern Washington who stated that plaintiff "had to lie in the back of my van and even that didn't give her relief. She then spent a good portion of the weekend lying down because she was in such pain." UACL02774; see also UACL02773 (plaintiff's supervisor explained that plaintiff was "increasingly unable to sit for long periods of time, for example. This made the drive to work, an airplane flight, or sitting at her desk a painful ordeal"). Unum does not explain how plaintiff's car trip spent lying down in pain shows that she could perform a full-time sedentary job. Unum's consideration of the lay evidence and plaintiff's personal activities was impermissibly one-sided. See, e.g., Rekstad v. U.S. Bancorp, 451 F.3d 1114, 1120 (10th Cir. 2006) ("It was arbitrary for U.S. Bancorp to make its decision to deny benefits without it giving full and fair consideration to the affidavits submitted by Ms. Rekstad and her relatives").

Even though Unum interviewed plaintiff, it never asked her about the two trips or about the amount of pain they caused her. The failure to do so is inconsistent with the "meaningful dialogue between ERISA plan administrators and their beneficiaries" that is the heart of the statute's protections. Booton v. Lockheed Med. Benefit Plan, 110 F.3d 1461, 1463 (9th Cir. 1997). Instead of considering the available evidence, Unum made assumptions about the trips and used them to discount both the medical and personal evidence in plaintiff's favor. Similarly, Unum did not consider the fact that plaintiff had *significantly* reduced her personal activities. For example, although she used to mountain bike, roller blade, ski, hike, and garden, she no longer engaged in any of those activities. UACL01635.

When these errors are considered with Unum's conflict of interest and history of denying valid claims, the Court finds that Unum abused its discretion. This was an extremely close call for the Court. Unum did much more in this case to conduct multiple levels of review and even, on one occasion, brought in a doctor not associated with the company. Clearly the company has paid a continuing price for its parsimonious and often unfair processing of claims in prior cases.

The Court agrees it would be equally unfair to punish Unum forever for past failures. However, the Court ultimately finds that Unum's failure to take the steps discussed above and its decision not to use "truly independent medical examiners or a neutral, independent review process"[5] tilts the final result toward a decision in favor of the plaintiff under this abuse of discretion standard.

### 3. The Appropriate Remedy.

Having found that Unum abused its discretion, the Court considers the appropriate remedy. Plaintiff requests that the Court order Unum to pay benefits. However, she did not cross move for summary judgment. The Court will not award her relief in the absence of such a motion. Moreover, the appropriate remedy is unclear because neither party briefed the issue or addressed whether a remand to the administrator might be appropriate. Accordingly, the Court will not order Unum to pay benefits at this time.

## III. CONCLUSION

For all of the foregoing reasons, the Court DENIES defendants' motion for summary judgment (Dkt. #26).

DATED this 10th day of December, 2008.

Robert S. Lasnik
United States District Judge

---

[5] Abatie, 458 F.3d at 969 n.7. The *Abatie* court explained that a "conflicted administrator" "may find it advisable to bring forth affirmative evidence that any conflict did not influence its decisionmaking process." Id. at 969.